

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

**PRICE DANIEL**
**ATTORNEY GENERAL**

April 16, 1947

Hon. Britton T. Edwards, Jr., Vice Chairman,
Public Lands and Buildings Committee
House of Representatives,
Austin, Texas

Opinion No. V-149

Re: Constitutionality of
H. B. 748 author-
izing the Commission-
er of the General
Land Office to exe-
cute royalty con-
tracts on State land;
authorizing admini-
strators, executors
and guardians to
make agreements cov-
ering oil and gas
interests of es-
tates; and the effect
of such Act on the
State's Antitrust
Laws.

Dear Sir:

We have read your request for an Opinion, dated April 2, 1947, which reads as follows:

"The Committee on Public Lands and Build-
ings instructed me, as Vice-Chairman, to give
H. B. 748 to you with the request that you give
us an opinion on the constitutionality of the
measure, and its effect upon the State's Anti-
trust laws."

The title to such bill reads:

"AN ACT authorizing the Commissioner of the
General Land Office to execute con-
tracts committing the oil and gas
interests of the State to lawful
agreements with the approval of the
School Land Board if the oil and
gas interests are set apart for

Permanent Free School Fund and the several asylum funds, and of the board, agent, agency or authority of the state vested with authority to lease or approve the leasing of lands for oil and gas in other lands or areas; authorizing administrators, executors, guardians, or other fiduciaries administering estates under control and jurisdiction of the County Courts to execute contracts committing to lawful agreements the oil and gas interests of the estates with the approval of the County Courts; prohibiting the execution of contracts which in any manner violate the anti-trust laws of this State; repealing all laws and parts of laws in conflict herewith; providing a savings clause, and declaring an emergency."

The Constitution of Texas, Art. III, Sec. 35, provides, with exceptions not relevant here, that "No bill * * * shall contain more than one subject, which shall be expressed in its title. * * * *"  In determining whether the title to an Act embraces more than one subject, the title must be construed with reference to the language used in it alone, and not in the light of what the body of the Act contains. 50 Am. Jur. 173, Statutes, Sec. 192.

The title above quoted contains two subjects:  (1) an Act to permit the General Land Office to execute royalty contracts; and (2) an Act authorizing administrators, executors, guardians and other fiduciaries to execute contracts committing to lawful agreements the oil and gas interests of estates. Since the title contains two subjects, the bills runs afoul of Art. III, Sec. 35, above quoted. The title could be redrawn to correct the above defect. A suggested title is herewith attached.

The Bill otherwise is constitutional. The language used therein is extremely broad, and is not definite as to what type of contracts are included therein.  It gives blanket authority, but it is believed not to be so vague and indefinite as to be unconstitutional.

The Bill is capable of a construction which would render it meaningless in that it simply authorizes the persons named therein to make "lawful" agreements on the subjects stated. These people are already authorized to make agreements which it is lawful for them to make. Given such construction, the bill would add nothing to their powers.

Since this bill is lifted almost verbatim from Sections 2 and 3 of H. B. 67, it is presumed that the intent of the bill is to permit the persons named therein to enter into pooling agreements, when and if such agreements are lawful. But that intent doesn't appear from this Bill itself.

That part of Section One (line 11) which particularizes the water-covered lands covered, omits inland lakes. The Bill further omits specific reference to State lands inside the tidewater limits, which are leased by other authority than the Relinquishment Act.

H. B. 748 is broad enough to authorize the Commissioner of the General Land Office to execute agreements on University of Texas lands, with the approval of the Board of Regents. The present law authorizing the State to pool its interests in gas fields, specifically provides: "except leases covering lands belonging to The University of Texas". General Laws 1945, 49th Leg. R.S., ch. 309, p. 507, Sec. 1, being Art. 5368b, V.C.S.

The same Act above referred to requires the retention by the State of a minimum royalty. H. B. 748 omits this provision.

All of the above items are pointed out in case you intend to offer amendments to cure any of such matters.

Because of Section 3 of the Bill, stating that none of the persons named in the Bill are authorized to execute any agreement which would violate the Antitrust laws, the Bill in no way endangers the antitrust laws of this State.

## SUMMARY

The Title to H. B. 748, authorizing the

Commissioner of the General Land Office to exe-
cute lawful oil and gas royalty contracts, and
authorizing administrators, executors, guardians
and other fiduciaries to execute agreements con-
cerning oil or gas interests in estates com-
mitted to their charge, is defective in that it
contains more than one subject. Constitution
of Texas, Art. III, Sec. 35. The Bill is
otherwise constitutional, and will have no ef-
fect on the antitrust laws of this state.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Joe R. Greenhill
Joe R. Greenhill
Assistant

JRG:WB:jm
Encl.

APPROVED APR. 17, 1947

ATTORNEY GENERAL

AN ACT authorizing the Commissioner of the General Land Office, Administrators, Executors, Guardians, and other fiduciaries, to commit certain oil and gas interests within their charge, to lawful agreements; prescribing the procedure therefor; setting out the approval required therefor; and providing for other conditions surrounding the execution of such agreements; prohibiting the execution of contracts which in any manner violate the antitrust laws; repealing all laws and parts of laws in conflict herewith; providing a saving clause, and declaring an emergency.